UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ACTION CAPITAL CORPORATION                                    PLAINTIFF


v.                                              CIVIL ACTION NO. 3:10-CV-00434


ELECTRO-MOTIVE DIESEL, INC.                                   DEFENDANT


## MEMORANDUM OPINION


This matter is before the court on the motion of defendant Electro-Motive Diesel, Inc.

("EMD") to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) (DN

11). For the reasons set forth herein, defendant's motion will be **GRANTED** in part and **DENIED**

in part.


## BACKGROUND


The plaintiff in this case, Action Capital Corporation ("Action Capital") is in the business

of accounts receivable financing, also known as "factoring." The defendant, EMD, produces

locomotives.

In May or June of 2008, Action Capital entered into a factoring agreement with Integrity

Manufacturing, LLC ("Integrity"), a Shepherdsville, Kentucky-based company that supplied

gear casings for EMD to use in its locomotives.[1] Integrity sold or assigned many of its accounts

receivable to Action Capital in exchange for cash; Action Capital received the right to payment

on those accounts. In a letter dated June 12, 2008, Integrity formally notified EMD of the

---

[1]Action Capital's Complaint alleges that the factoring agreement was entered into on or
about June 20, 2008. Pl.'s Compl. ¶ 6. However, the Financing and Security Agreement attached to
the Complaint indicates the agreement was executed on May 16, 2008. Pl.'s Compl. Ex. A.

factoring arrangement and directed it to remit future payments on its open invoices to Action

Capital. EMD acknowledged this letter on July 7, 2008, and began remitting payments to Action

Capital instead of Integrity.

Between June 2008 and February 2009, Action Capital factored $2,290,887.26 in

invoices to EMD from Integrity. During that time, EMD offset or deducted $234,253.25 from its

payments to Action Capital. These offsets were taken pursuant to a provision in the purchase

order agreement between EMD and Integrity that allowed deductions for defective or missing

product.[2] Action Capital did not object to EMD's initial offsets, which totaled approximately 10

percent of the total outstanding invoices.

In February 2009, EMD notified Integrity that it was claiming an offset of $434,700 (the

"2007 offset") against its current outstanding invoices. EMD claimed that it was entitled to the

offset because of losses it suffered due to allegedly defective gear casings it received in the

spring and summer of 2007. EMD and Integrity met in an attempt to discuss the offset but were

unable to reach an amicable resolution. On February 25, 2009, a buyer for EMD, Jason Allgood,

notified Integrity that the $434,700 offset would be claimed against all outstanding invoices –

which totaled $435,758.75 – and that EMD would not commit to any future business with

Integrity.[3]

---

[2]In its brief opposing EMD's Motion to Dismiss, Action questions whether the Purchase Order Terms and Conditions that provided EMD with its right of offset actually bound either Action Capital or Integrity. However, Action asserts that it allowed EMD to take such offsets as provided for in the Terms and Conditions between June 2008 and February 2009.

[3]Integrity eventually went out of business – a result, so Action Capital claims, of the non-payment of the disputed invoices and the loss of EMD's business.

Action Capital, which holds the right to payment on the outstanding EMD invoices, has refused to recognize EMD's claimed offset. It argues that the offset was arbitrarily calculated and is therefore invalid. It also claims that EMD intentionally failed to disclose the existence of the 2007 offset in order to ensure that Action Capital would continue financing Integrity, thereby allowing Integrity to keep supplying gear casings to EMD until EMD could find a new source. Action Capital claims that it was in contact with EMD regarding the payment of invoices between June 2008 and February 2009, but that EMD never mentioned the offset until February 2009. Action claims that it would have discontinued its factoring arrangement with Integrity had it known EMD would claim such a large offset.

EMD claims that it had a valid reason for failing to disclose the 2007 offset until 2009. It asserts that the defects in the gear casings were latent, that the problems with the casings were not discovered until early 2008, that EMD had to perform extensive repairs to make the gear casings usable, and that it claimed the offset once those repairs were complete. EMD argues that its obligation to Action Capital is extinguished because it is entitled to set off any amounts it owes by the value of production time lost due to the allegedly defective casings.

On June 16, 2010, Action Capital brought this action against EMD, alleging breach of contract and unjust enrichment based on EMD's failure to pay the outstanding invoices, and claims of fraud based on EMD's failure to disclose the 2007 offset. EMD has now moved to dismiss this case under Federal Rule of Civil Procedure 12(b)(6).

**ANALYSIS**

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and

construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999). The motion must be denied "'unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir. 1989) (quoting *Nishiyama v. Dickson Cnty.*, 814 F.2d 277, 279 (6th Cir. 1987)).

### 1. Action's Fraud Claims

EMD argues that Action's fraud claims must be dismissed because Action has failed to plead the necessary elements of its causes of action. Before addressing the merits of this argument, we note that both parties have provided only limited briefing with respect to the applicable state law in this case. EMD argues that a choice-of-law provision in the Purchase Order Agreement between EMD and Integrity mandates the application of Illinois law. Action Capital, however, questions whether it is bound by this Agreement and, even if it were, whether a court applying Kentucky choice of law principles would enforce the provision or would decide to instead apply Kentucky law.

The question of whether Action Capital is bound by the Agreement between EMD and Integrity has not been fully briefed by either party. EMD seems to assume that Action Capital is bound by the Agreement, while Action notes only that "[t]here is an issue of whether Integrity or Action was ever bound by the terms and conditions." Pl.'s Response to Motion to Dismiss at 3. Given the paucity of information presented, we are reluctant to make a determination on this issue at this time. Because the decision as to whether the Purchase Order Agreement – and thus its choice of law provision – applies to the relationship between Action Capital and EMD will necessarily color any decision we make with respect to choice of law, we will abstain from

- 4 -

deciding this issue at this time. As Action Capital points out, both Kentucky and Illinois have enacted the Uniform Commercial Code, and the elements of common-law fraud are similar in both jurisdictions. We therefore need not resolve the questions of the applicability of the Purchase Order Agreement or choice of law in order to resolve this motion.

*A. Fraud in the Inducement*

Under Illinois law, a claim for fraud in the inducement consists of the following elements: (1) a statement of material fact, as opposed to opinion, (2) that is untrue, (3) that the party making the statement knows or believes to be untrue, (4) that the person to whom the statement is made believes and relies on, and has the right to do so, (5) made for purposes of inducing the other party to act, and (6) reliance by the person to whom the statement is made, which leads to his injury. *Broberg v. Mann*, 213 N.E.2d 89, 91–92 (Ill. App. 1965). In Kentucky, a plaintiff must plead the existence of: (1) a material representation (2) which is false (3) and is known to be false or made recklessly (4) made with inducement to be acted upon (5) acted in reliance thereon and (6) causing injury. *United Parcel Serv. Co. v. Rickert,* 996 S.W.2d 464, 468 (Ky. 1999).

Action Capital's claims for fraudulent inducement must be dismissed for two reasons. First, Action Capital has failed to plead any fact that would support its claim that EMD's alleged misrepresentations somehow induced it to enter into its factoring agreement with Integrity. In fact, Action Capital's own Complaint makes this conclusion impossible. Action Capital alleges that EMD became aware of the factoring agreement in June 2008. However, the executed copy of the agreement attached to Action Capital's complaint indicates that Action and Integrity entered the agreement in May 2008. If EMD were not aware of the arrangement until June 2008,

then it certainly could not have made any statements in an effort to induce Action Capital to enter into the agreement with Integrity.

Moreover, we are not convinced that EMD actually made any "statement" or "representation" to Action about the status of EMD's offsets. Action does state in its complaint that "EMD represented that the off-sets and charge-backs for alleged defective or missing product in the normal course of business, which totaled $234,253.25 during the June 2008 to February 2009 timeframe, were the only off-sets and charge-backs being claimed by EMD." Pl.'s Compl. ¶ 20. Action provides no further details in its complaint about the content of this alleged representation, although its Response to EMD's Motion to Dismiss makes clear that the "representation" came in the form of EMD's taking "small, reasonable setoffs during 2008, but intentionally [omitting] the fraudulent 2007 setoff." Pl.'s Resp. to Def.'s Mot. to Dismiss at 6. Action does not claim that EMD made any other representations with respect to the size or status of its offsets.[4] Thus, the only "representation" Action alleges came in the form of EMD's conduct.

It is true that in some instances, conduct alone may constitute a representation. For instance, "a person who trades in commodities represents that the trades are backed by cash or a margin account. A president of a corporation who personally issues stock represents by his conduct that the stock is valid," and "the issuance of coverage by an insurance company in return for a premium is a tacit representation to the consumer that the coverage has value." *Glazewski v.*

---

[4]Action does claim that EMD made some form of representation to Integrity regarding EMD's plans for a long-term manufacturing relationship in August 2008. Pl.'s Compl. ¶ 22–23. Action also claims that EMD told Integrity that it recognized and planned to pay a $115,200 invoice for design, development, and tooling costs. Pl.'s Compl. ¶ 24–25. Neither of these representations, however, pertained to the size of EMD's offsets.

*Coronet Ins. Co.*, 483 N.E.2d 1263, 1266 (Ill. 1985). *See also Weikel v. Sterns*, 134 S.W. 980 (Ky. 1911). But we are unable to find any support for the idea that a buyer taking a series of "acceptable" offsets in the course of its business is the equivalent of an affirmative representation that no other offsets exist.

Action has not pleaded any facts that would support the conclusion that EMD fraudulently induced it to enter into the factoring agreement with Integrity. Its claim on this count must therefore be dismissed.

*B. Fraudulent Omission*

Under Illinois law, a plaintiff raising a claim for fraudulent omission or concealment must plead: (1) the concealment of a material fact; (2) intended to induce a false belief, under circumstances creating a duty to speak; (3) that the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a misrepresentation that the fact did not exist; (4) that the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury. *Stewart v. Thrasher*, 610 N.E.2d 799, 804 (Ill. App. 1993). Kentucky law imposes similar requirements: a plaintiff must plead (1) that the defendant had a duty to disclose a material fact; (2) that the defendant failed to disclose the fact; (3) that the defendant's failure to disclose the fact induced the plaintiff to act; and (4) that the plaintiff suffered actual damages. *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. App. 2003).

Both Illinois and Kentucky law require the existence of a "duty to speak" or "duty to disclose" to support recovery for fraudulent omission or concealment. Action Capital has not alleged any fact that would give rise to such a duty here. A duty to speak may arise under some circumstances when a party discloses some information but gives the impression of having told the full truth. *See Kinsey v. Scott*, 463 N.E.2d 1359, 1365 (Ill. App. 1984), *Rivermont*, 113 S.W.3d at 641. However, as we explained above Action does not allege that EMD ever actually made any disclosures with respect to the size of the offsets it was taking or the size of the offsets it planned to take in the future. Rather, EMD simply took a series of offsets in the course of business – then suddenly and retroactively took a much larger one without telling Action Capital that it was coming. Even if, as Action alleges, EMD hid this offset until it was commercially expedient for it to take it, Action has offered nothing to support the conclusion that EMD had an affirmative duty to reveal its existence. Action's fraudulent omission claim will be dismissed.[5]

### 2. Breach of Contract

EMD next argues that Action Capital's claim for breach of contract should be dismissed because EMD has a right to set off any outstanding amounts it owes by the amount of damages incurred due to missing or nonconforming goods. The Purchase Order Agreement between EMD and Integrity explicitly provides for this right, and the Uniform Commercial Code as enacted in both Kentucky and Illinois provides buyers with a right to set off from any price paid the damages incurred as a result of the purchase of non-conforming goods. *See* KY. REV. STAT. § 335.2-717; 810 ILL. COMP. STAT. 5 / 2-717.

---

[5]EMD has also moved to dismiss this action pursuant to Federal Rule of Civil Procedure 9(b), which requires that a plaintiff "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). Because our decision with respect to Action's pleading of the elements of its fraud claims is dispositive of its claims, we need not address EMD's Rule 9(b) argument.

A buyer's right of offset, however, does not preclude a seller from questioning the validity of such a deduction. Damages incurred as a result of accepting non-conforming goods – such as the allegedly defective goods at issue in this case – must be determined in a reasonable manner. *See* KY. REV. STAT. § 355.2-714(1) ("Where the buyer has accepted goods and given notification . . . he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined *in any manner which is reasonable*.") (emphasis added); 810 ILL. COMP. STAT. 5 / 2-714(1) (same). Here, Action Capital argues that the damages EMD claimed were unreasonable and therefore EMD should not be able to claim them as an offset pursuant to 2-717 or under the Purchase Order Agreement. EMD's right to offset is not in question, but the reasonableness of its offset – and thus whether EMD may properly withhold payment without being in breach – is. The mere existence of a right to offset does not mean Action Capital cannot question the amount or the manner in which it was calculated. If EMD's calculation of the offset is found to be unreasonable, then Action Capital, as the assignee of Integrity's right to payment under the contract between it and EMD, could properly lodge an action for breach as a result of the unpaid invoices. EMD's motion to dismiss this claim will be denied.

### 3. Unjust Enrichment

EMD's argument that because Action Capital alleges that it is entitled to recovery under a contractual theory it is precluded from asserting an unjust enrichment claim is unfounded. A plaintiff at the pleading stage may plead alternative legal theories even if they are inconsistent. FED. R. CIV. P. 8(d)(3) ("[a] party may state as many separate claims or defenses as it has, regardless of consistency."). Although a plaintiff may not recover under both theories, *see Nesby*

*v. Country Mutual Insurance Co.*, 805 N.E.2d 241, 243 (Ill. App. 2004); *Codell Const. Co. v. Commonwealth*, 566 S.W.2d 161, 165 (Ky. App. 1977), it is not precluded from asserting both theories at the pleading stage. This is not a case where the plaintiff has made the existence of a valid and enforceable agreement an explicit basis for an unjust enrichment claim, *see Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704–05 (Ill. App. 2005). Rather, Action Capital's Complaint simply alleges, in short, that EMD received goods for which it never paid, and that Action Capital, as the holder of the right to payment on those goods, is entitled to collect on its debt. Action's unjust enrichment allegation incorporates no mention of a contractual obligation between Action Capital and EMD. Thus, EMD's motion to dismiss this claim will also be denied.

### *4. Conclusion*

Because Action Capital has failed to plead facts to support the elements of fraud in the inducement and fraudulent omission under both Kentucky and Illinois law, EMD's motion to dismiss those claims will be granted. However, EMD's motion to dismiss Action's claims for breach of contract and unjust enrichment will be denied.

A separate order will issue in accordance with this opinion.